[Cite as *Assn. of Cleveland Firefighters, Local 93 I.A.F.F. v. Cleveland*, 2018-Ohio-2049.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.    106472

**ASSOCIATION OF CLEVELAND
FIREFIGHTERS, LOCAL 93 I.A.F.F.**

PLAINTIFF

vs.

**CITY OF CLEVELAND, ET AL.**

DEFENDANTS-APPELLEES

[Appeal by Deberra
Schroeder, et al., Appellants]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-823955

**BEFORE:**    Boyle, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**    May 24, 2018

**ATTORNEYS FOR APPELLANTS**

Timothy D. Smith
Karen Lefton
The Lefton Group, L.L.C.
3480 W. Market Street, Suite 304
Akron, Ohio    44333


**ATTORNEYS FOR APPELLEES**

**For City of Cleveland, Frank Jackson, and City of Cleveland
Civil Commission**

Barbara Langhenry
Director of Law
City of Cleveland
William M. Menzalora
Chief Assistant Director of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio    44114

Jon M. Dileno
Jessi L. Ziska
Zashin & Rich Co., L.P.A.
950 Main Avenue
Cleveland, Ohio    44113

**For Angelo Calvillo, Captain Christopher Posante, and
Kenneth Drost**

Bradric T. Bryan
Goodwin & Bryan, L.L.P.
22050 Mastick Road
Fairview Park, Ohio    44126

**For John Coughlin, et al.**

Scott C. Essad
721 Boardman-Poland Road, Suite 201
Boardman, Ohio    44512

**For Battalion Chief Anthony P. Luke**

Edward Richard Stege

Stege & Michelson Co., L.P.A.
30799 Pinetree Road, Suite 302
Cleveland, Ohio    44124


**ALSO LISTED**

**For Association of Cleveland Firefighters, Local 93 I.A.F.F.**

Joseph W. Diemert
Mark V. Guidetti
Thomas M. Hanculak
Diemert & Associates Co., L.P.A.
1360 S.O.M. Center Road
Cleveland, Ohio    44124


MARY J. BOYLE, J.:

{¶1}    Eight fire captains of the Cleveland Fire Department have been seeking to intervene in a case filed over four years ago by the firefighters' union against the city of Cleveland.    The eight fire captains contend that they were eligible for promotion to the ranks of battalion chief and assistant chief within the fire department but were deprived of the opportunity to take a competitive promotional examination designed to test for merit and fitness as required by the Ohio Constitution, Ohio Revised Code, Cleveland City Charter, and Cleveland Civil Service Rules.

{¶2}    These eight fire captains, the proposed intervenors and appellants in this case (hereinafter referred to as "appellants") appeal the trial court's denial of their motion to intervene.    Specifically, the appellants wish to intervene in the lawsuit filed on March 20, 2014, by the Association of Cleveland Firefighters, Local 93 I.A.F.F. ("union" or "Local 93") against the city of Cleveland.    In its complaint, the union seeks to stop the city from administering

noncompetitive examinations for promotion to the positions of assistant chief and battalion chief.

{¶3} The appellants raise one assignment of error for our review, namely, that "[t]he trial court abused its discretion in denying [their] motion to intervene." We find no merit to their arguments and affirm the judgment of the trial court.

## I. Procedural History and Factual Background

{¶4} The procedural history and factual background of this case is not in dispute and is largely compiled from the parties' briefs and from previous appeals filed with this court and the Ohio Supreme Court.

### A. March 2014 Announcement

{¶5} On March 14, 2014, the city issued a "civil service announcement" that it would conduct a "noncompetitive examination" for the positions of assistant chief and battalion chief. The noncompetitive process used by the city consisted of the submission of a resume and an interview by a group of panelists. The application filing period was set from March 17, 2014 through March 22, 2014.[1]

{¶6} This was the first time the city ever used noncompetitive testing to promote individuals in the fire department. Prior to this, the city used a competitive examination for promotions.

### B. The Dismissal of the Union's Complaint and its Initial Appeal

{¶7} The trial court sua sponte raised the issue of subject matter jurisdiction. It held a hearing on the matter on April 17, 2014. Both the union and the city argued that the trial court had proper jurisdiction because the issue of noncompetitive exams was not addressed in their

---

[1]On March 20, 2014, the same day the union filed its complaint, the trial court entered an order allowing the city to continue to accept applications through the city's set deadline.

collective bargaining agreement. On April 25, 2014, the trial court issued a decision finding that it lacked jurisdiction to hear the matter in light of the union's failure to exhaust its remedies under the collective bargaining agreement. The court sua sponte dismissed the union's claims as a matter of law.

{¶8} The union appealed, and the city cross-appealed. *See Assn. of Cleveland Firefighters, Local 93 I.A.F.F. v. Cleveland*, 8th Dist. Cuyahoga No. 101369, 2015-Ohio-1538. Both parties argued the trial court erred when it dismissed the union's complaint for lack of subject matter jurisdiction. On April 23, 2015, this court reversed the trial court's decision and remanded the matter for the trial court to adjudicate the union's complaint and injunction motions. *Id*. at ¶ 24.

### C. The City Promoted Six Fire Captains through the Noncompetitive Examination Process

{¶9} The union did not request a stay of execution pending the outcome of the appeal. Thus, while the matter was pending before this court, the city administered the noncompetitive promotional exam in December 2014. Through this noncompetitive examination, the city promoted six fire captains to fill the battalion-chief positions in the early months of 2015.

### D. The Trial Court Grants the Union's Motion for Preliminary Injunction

{¶10} According to the city, additional vacancies arose for the positions of battalion chief and assistant chief in March and April 2015. But after this court reversed and remanded the union's first appeal (which was on April 23, 2015), the trial court granted the union's preliminary injunction in August 2015, prohibiting the city from promoting any other fire captains through the noncompetitive examination process.

{¶11} In its order granting the union's preliminary injunction, the trial court found that

the city's administrative decision to change to noncompetitive testing was not supported by the evidence and there was a substantial likelihood that the union would prevail on the merits of its declaratory judgment. The trial court further found that if the injunction was not granted, the potential of irreparable harm to the union was "quite real" because "[t]he decisions for which battalion and assistant chiefs are responsible are often life and death decisions."

**E. The Union's Amended Complaint**

**{¶12}** In September 2015, the union moved for leave to amend its complaint, which the trial court granted in December 2015. In its amended complaint, the union again sought a declaratory judgment, a preliminary injunction, and permanent injunction and also sought a petition for a writ of mandamus. The union maintained that because the March 14, 2014 announcement violated the Ohio Constitution, both state and local law, and the city's charter it was entitled to

> a declaratory judgment that all vacancies in the promoted ranks of Division of Fire created since the expiration of the most recent certified civil service eligibility lists, as well as any such vacancies which have yet to be created in the promoted ranks, must be filled by a competitive examination process in compliance with applicable law.

**{¶13}** The union also sought preliminary and permanent injunctions prohibiting the administration of noncompetitive promotional exams for any promoted rank in the fire department and sought a writ of mandamus "as a result of the city's failure to comply with its clear legal duties with regard to promotional examinations within the Division of Fire[.]" The union sought a writ directing the city to immediately administer competitive exams, certify eligibility lists to restore the promotional cycle, and fill all promotional vacancies created since the expiration of the most recent certified civil service eligibility lists with firefighters from the newly administered competitive exams.

**F. Motions to Intervene**

{¶14} Numerous firefighters moved to intervene in the case. The intervenors and proposed intervenors can be divided into three groups. The first group includes four firefighters who moved to intervene in the case because they asserted that they completed the noncompetitive examination and wished to preserve their spots on the promotion list generated by that process. These firefighters argued that their interests were in direct conflict with the union's interests. The city did not oppose these motions because they were aligned with the city's position. The trial court granted these firefighters' motions to intervene.

{¶15} The second group of intervenors includes five firefighters who were actually promoted as a result of the noncompetitive testing process. The city did not oppose these motions either because, again, their positions were directly aligned with the city's position.

{¶16} The third group of "proposed intervenors" includes 12 fire captains who wished to intervene in the case to challenge the noncompetitive examination process. Eight of these original 12 fire captains are the appellants in this appeal (4 of the original 12 have since retired). These 12 fire captains filed their motion to intervene on September 8, 2015. They argued that they were denied the opportunity to compete fairly for the position of battalion chief through a competitive examination test for merit and fitness, which they contend is required by law. The city opposed these fire captains' motion to intervene.

{¶17} As of November 12, 2015, two months after they filed their motion, the trial court had not yet ruled on the proposed intervenors' motion to intervene, so they withdrew it. Subsequently, they filed a writ of mandamus in the Ohio Supreme Court. With respect to their reason for withdrawing their motion to intervene, appellants contend the following in their brief to this court:

[T]he trial court had granted a preliminary injunction and temporary restraining order, determining that the union had a high likelihood of success on the merits. That led the attorneys — including representatives for the city, the union, all nine intervenors and the eight captains [the proposed-intervenors appellants] — to determine that mediation might be fruitful. They selected a mediator and set November 19 as the date for mediation. The trial court set a case management conference for October 29, at which time it "was informed that the parties have agreed on a private mediator and have set a date for that mediation: 11/19/2015." (Oct. 29, 2015, judgment entry.) Counsel for the eight captains had asked to participate in that telephonic CMC and was told she would be conferenced in "as long as no one objected." She was not conferenced in; the city had objected.

The parties — the union, the city and the nine intervenors who wanted to uphold their spots on the noncompetitive application list — prepared for mediation. There would be no seat at the table for the eight captains. Their motion to intervene had been pending for more than two months. The six intervenors who filed later had already been allowed in. Mediation was imminent. The eight captains made the calculated, strategic decision to stop the train until they could get on, determining that there should be no resolution without their interests represented.

{¶18} Appellants assert that their filing the writ of mandamus in the Ohio Supreme Court "had the desired impact of halting the mediation." The trial court issued a judgment entry on November 23, 2015, stating

The court has been informed that the private mediation that was scheduled in this matter did not go forward and has been indefinitely suspended. The parties are hereby advised that this matter will proceed under the case management schedule established by this court.

### G. 12 (8 Remaining) Fire Captains' Writ of Mandamus

{¶19} The day after the 12 fire captains withdrew their motion to intervene, they filed a complaint for a writ of mandamus with the Ohio Supreme Court in *State ex rel. Schroeder v. Cleveland*, 150 Ohio St.3d 135, 2016-Ohio-8105, 80 N.E.3d 417. The 12 fire captains (relators in the *Schroeder* case) asserted that they had a clear legal right to require that the city

choose battalion chiefs and assistant chiefs from among the three highest scores in a competitive promotional exam, that they have no adequate remedy in the ordinary course of the law, and that [the city] has no lawful reason for refusing to

offer a competitive exam or for filling the positions with firefighters who do not rank among the top three scores in a competitive exam.

*Id*. at ¶ 11.

**{¶20}** They requested that the Ohio Supreme Court order the city

to immediately offer a competitive promotional exam to all firefighters who were eligible to sit for such a test when the noncompetitive examination process was announced in March 2014, fill all battalion-chief and assistant-chief positions available since March 2014 with firefighters who rank in the top three of that competitive test, make those promotions retroactive to the date each would have been effective if [the city] had complied with the law, and provide back pay and benefits to the firefighters promoted under the new competitive process.

*Id*.

**{¶21}** The Supreme Court found that the relators challenged the noncompetitive examination process on the same grounds as the union did in its amended complaint and sought the immediate return of the competitive examination process. *Id*. at ¶ 21. The Supreme Court dismissed the relators' writ, finding that they had an adequate remedy in the ordinary course of law by way of intervention. *Id*. at ¶ 24. The Supreme Court further stated that although the trial court would not rule on the 12 fire captains' motion to intervene and had "scheduled mediation without having allowed their intervention," the 12 fire captains should have filed a writ of procedendo "to force the trial court to grant or deny their motion to intervene." *Id*. at ¶ 23, 25.

**{¶22}** The Supreme Court issued its decision on the 12 fire captains' writ on December 14, 2016. The appellants (8 remaining of the original 12 fire captains) now assert that when the Supreme Court dismissed their writ, they could not move to intervene again in the case because it had been pending on appeal for the second time at that point, as explained in the next section.

### H. The Union's and the City's Motions for Summary Judgment and the Union's Second Appeal

**{¶23}** Meanwhile, in March 2016, the union and the city each filed motions for summary judgment. The union opposed the city's motion. The city, however, did not file a response in opposition to the union's motion for summary judgment. In September 2016, the trial court dismissed the action for a second time, finding that there was no justiciable issue or controversy because the positions had already been filled through the noncompetitive examination process.

**{¶24}** The union appealed this decision. *See Assn. of Cleveland Firefighters, Local 93 I.A.F.F. v. Cleveland*, 8th Dist. Cuyahoga No. 105033, 2017-Ohio-6887 ("second appeal"). On July 20, 2017, this court found that the trial court erred when it dismissed the union's complaint, noting that "[o]n its face, the record appears to support [the union's] position that the city's decision to use a noncompetitive examination appears to be a violation of the Ohio Constitution, state and local law, and the city's Charter." *Id*. at ¶ 37. We reversed the trial court's decision and remanded the case, instructing the trial court to rule on the merits of the parties' summary judgment motions. *Id*.

### I. Appellants File a Second Motion to Intervene

**{¶25}** On July 28, 2017, about a week after this court reversed the trial court's decision in the second appeal, the appellants again moved to intervene in the case, which the trial court denied on October 23, 2017.

**{¶26}** In its judgment denying the motion to intervene, the trial court stated that it "initially" denied the appellants' motion because they failed to attach a pleading as required by Civ.R. 24(C).[2] The trial court then stated:

> Second, the court finds the motion to intervene is not timely. The present case was filed more than three years before the intervenors' most recent motion to

---

[2]'The trial court incorrectly stated Civ.R. 26(C), but it is clear that it meant Civ.R. 24(C).

intervene was filed, and one and a half years before the prior motion to intervene, which was voluntarily withdrawn on 11/12/2015. The court has conducted lengthy hearings and the parties have briefed multiple motions for summary judgment. Furthermore, the Eighth District's latest opinion in this matter instructed the court to consider the merits of plaintiff's motion for summary judgment. * * * Consistent with the Eighth District's opinion, this court is ready to proceed in adhering to the Eighth District's directive. The time for new pleadings and claims has clearly passed. Furthermore, the proposed intervenors have not simply re-filed their prior motion to intervene. In their prior motion to intervene, filed on 09/08/2015, the intervenors sought to participate as defendants, and with that motion, an answer was properly submitted. However, the motion was withdrawn on 11/12/2015 and the proposed intervenors now seek to intervene as plaintiffs. In light of these circumstances, the motion to intervene is not timely and must be denied.

{¶27} It is from this judgment that the appellants appeal, contending that the trial court erred in doing so. The trial court agreed to stay the proceedings pending appeal.

II. Law and Analysis

A. Standard of Review for Motion to Intervene

{¶28} The appellants contend that the trial court abused its discretion when it denied their motion to intervene as a matter of right under Civ.R. 24(A)(2).[3]

{¶29} To intervene in a case as a matter of right, the movant must file a timely application and show, pursuant to Civ.R. 24(A)(2), that: (1) the movant "claims an interest relating to the property or transaction that is the subject of the action"; (2) "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and that (3) the applicant's interest is not "adequately represented by existing parties." Civ.R. 24(C) also requires that the motion "be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought." Generally, courts construe

---

[3]In their motion, they argued that they had a right to intervene under Civ.R. 24(A) and, alternatively, that they should be permitted to intervene under Civ.R. 24(B). On appeal, however, they only argue that they had a right to intervene.

Civ.R. 24(A) liberally to allow intervention. *State ex rel. LTV Steel Co. v. Gwin*, 64 Ohio St.3d 245, 247, 594 N.E.2d 616 (1992).

{¶30} We review a trial court's decision on a motion to intervene for abuse of discretion. *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas*, 147 Ohio St.3d 432, 2016-Ohio-1519, 67 N.E.3d 728, ¶ 21, citing *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935.

**B. "Profound Miscarriage of Justice"**

{¶31} The appellants first argue that the trial court abused its discretion in denying their motion to intervene because "a profound miscarriage of justice" will occur without them in the case because it would "result in litigation progressing without the fundamental rights of interested and necessary parties being represented."

{¶32} The appellants rely heavily on *State ex rel. N.G.* in support of their argument. At the outset, we find that *State ex rel. N.G.* is not analogous to the facts in the present case and does not help the appellants. The procedural history of *State ex rel. N.G.* is complicated and not relevant here, but the case involved a custody dispute between a mother and father where the father was attempting to prevent the mother from intervening in a prohibition case that would affect the custody of their child. *Id*. at ¶ 1-3. Suffice it to say, *State ex rel. N.G.* was an extraordinary case involving a mother's "fundamental constitutional right to make decisions concerning the care, custody, and control of her children." *Id*. at ¶ 22, citing *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

{¶33} The appellants appear to argue that in *State ex rel. N.G.,* the Ohio Supreme Court set forth a new standard for determining abuse of discretion when reviewing a trial court's decision on a motion to intervene. They claim in their brief that the Supreme Court

concluded that discretion is abused where (1) the prejudice to the original parties due to the proposed intervention in minimal; (2) the respondent judge and court certainly were not prejudiced by the proposed intervention, since they have no personal stake in the outcome other than an additional case on the docket; and (3) the original parties can hardly claim prejudice where they should have reasonably expected the proposed intervenor to intervene at some point to protect her interests.

{¶34} In actuality, however, the Supreme Court was merely discussing the *specific factors* in that case to determine whether the mother's motion to intervene was timely. The Supreme Court analyzed the timeliness factors as follows:

[Father] argues that under Civ.R. 24(A), [mother] did not file her motion to intervene "timely." *In State ex rel. First New Shiloh Baptist Church v. Meagher*, 82 Ohio St.3d 501, 1998-Ohio-192, 696 N.E.2d 1058 (1998), this court laid out five factors for determining whether a motion to intervene is timely:

"(1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention."

*Id*. at 503, quoting *Triax Co. v. TRW, Inc*., 724 F.2d 1224, 1228 (6th Cir.1984).

The factors as applied to this case do not lead to a clear result. On the one hand, the purpose of intervention was to protect [mother's] right to the care and custody of her children and to present evidence about the false basis for Virginia's jurisdiction to the court; these are obviously important purposes. The prejudice to the original parties due to the proposed intervention is minimal. The respondent judge and court certainly were not prejudiced by the proposed intervention, since they have no personal stake in the outcome other than an additional case on the docket. [Father] can hardly claim prejudice when he filed a prohibition case as part of lengthy litigation regarding the custody of the children and did not name [mother], the children's mother, as a party. He should have reasonably expected [mother] to intervene at some point to protect her interests.

On the other hand, the case had already progressed to judgment, and as [father] points out, courts rarely allow intervention after judgment. *First New Shiloh*, 82 Ohio St.3d at 503-504, 696 N.E.2d 1058. The parties disagree as to when S.F. or

her attorneys became aware of the prohibition case. [Mother] claims that neither she nor her counsel was notified of the writ proceedings, and the writ was captioned using only [father's] initials, which concealed [father's] identity. [Father] counters that [mother] or her counsel were aware of the prohibition action in plenty of time for her to have intervened before the court decided the case. Evidence in the record on this issue is contradictory, but [mother] and her Ohio counsel assert under oath that they had no knowledge of the prohibition action until after the writ was issued. Virginia counsel asserts under oath that he was never given a copy of the prohibition pleading.

*State ex rel. N.G.*, 147 Ohio St.3d 432, 2016-Ohio-1519, 67 N.E.3d 728, at ¶ 23-25.

**{¶35}** The Supreme Court went on to hold that not only should the trial court have allowed mother to intervene as a matter of right, but that father should have joined mother as a necessary party under Civ.R. 19(A) as well. *Id.* at ¶ 26, 28.

**{¶36}** After reviewing *State ex rel. N.G.*, we conclude that it did not change the standard for reviewing courts when determining whether a trial court abused its discretion. We further find that *State ex rel. N.G.* has no applicability to the facts in the present case.

**C. Civ.R. 24(C)**

**{¶37}** The trial court first denied the appellants' motion to intervene because they failed to attach the required pleading that is mandated by Civ.R. 24(C). This statute provides, "[t]he motion and any supporting memorandum shall state the grounds for intervention and shall be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought."

**{¶38}** "Motions to intervene are regularly denied (and/or the denial upheld) due to the failure to attach a pleading as required by Civ.R. 24(C)." *Yemma v. Reed*, 7th Dist. Mahoning No. 16 MA 0015, 2017-Ohio-1015, ¶ 46 (upholding trial court's denial of motion to intervene in a tax foreclosure action where intervenor who ultimately sought relief from the foreclosure decree failed to attach a pleading to his motion to intervene); *see also State ex rel. Sawicki v.*

*Court of Common Pleas of Lucas Cty.*, 121 Ohio St.3d 507, 2009-Ohio-1523, 905 N.E.2d 1192, ¶ 21-22 (affirming denial of the motion to intervene on the ground that the intervenor failed to comply with Civ.R. 24(C) even though trial court did not rely on this rule provision when denying the motion); *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, ¶ 12, fn. 1 (denied motion to intervene because proposed intervenors failed to comply with Civ.R. 24(C)); *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections,* 74 Ohio St.3d 143, 144, 656 N.E.2d 1277 (1995) (denied motion to intervene because proposed intervenors failed to comply with Civ.R. 24(C)).

{¶39} The appellants contend that "within hours" of receiving the trial court's judgment entry, they filed their "accompanying pleading" pursuant to "Civ.R. 60(B)(1)." This motion was captioned, "Motion to Correct the Record." The body of the motion was only one paragraph, stating that under Civ.R. 60(B)(1), the appellants were submitting the required pleading "which was inadvertently omitted from their motion to intervene filed on July 28, 2017." The appellants, however, did not include any law or argument in their "Motion to Correct the Record" regarding the requirements of Civ.R. 60(B) or *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), the seminal case setting forth the Civ.R. 60(B) standard.

{¶40} The appellants assert that although they inadvertently forgot to attach their pleading to their second motion to intervene, they did file "the required pleading with [their] initial motion to intervene in September 2015." While this is true, the appellants originally sought to intervene as party defendants and filed an answer with their motion. But in their second motion to intervene filed on July 28, 2017, they sought to intervene as party plaintiffs. In their motion to correct the record with the required pleading (which they did not file until November 1, 2017),

they attached their proposed complaint. The appellants maintain that although their proposed interevenor status and pleading has changed, the substance of their first and second motions to intervene was the same. Again, while that may be true, their proposed pleadings are significantly different. Thus, we find the appellants' argument — that because they filed the required pleading with their original motion, their inadvertent failure to file one with their new motion is less prejudicial — to be wholly without merit.

{¶41} We further note that the trial court has not yet ruled on the appellants' "Civ.R. 60(B)(1) motion." As we indicated, however, this was not even a proper Civ.R. 60(B) motion because the appellants failed to include any law or argument in their motion. Even if they had, the appellants concede that the filing of their motion to correct the record "had no effect, of course, because in addition to denying the [appellants'] intervention due to the inadvertently omitted pleading," the trial court also found it to be untimely.

**D. Timeliness**

{¶42} The appellants next argue that the trial court abused its discretion when it denied their motion to intervene due to untimeliness. "The timeliness of a motion to intervene pursuant to Civ.R. 24(A) is a matter within the sound discretion of the trial judge." *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, ¶ 47. We set forth the timeliness factors in the previous section, but they bear repeating here:

> (1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*State ex rel. N.G.*, 147 Ohio St.3d 432, 2016-Ohio-1519, 67 N.E.3d 728, at ¶ 23, quoting *Triax*

*Co.*, 724 F.2d 1224.

{¶43} When looking at the timeliness factors in this case, we agree with the appellants that their motion was not *as* untimely as the trial court indicated. The trial court found that their second motion (the one at issue) was filed more than three years after the case had begun and that their first motion, which they voluntarily withdrew in November 2015, had been filed nearly one and a-half years after the case had been filed. But due to the union filing two appeals in the case, it had been pending on appeal for a significant portion of that time (nearly 20 months).

{¶44} Nevertheless, when looking at all of the factors, what actually occurred, and the trial court's reasoning, we simply cannot say that the trial court's decision was "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996) (setting forth what it takes to find an abuse of discretion).

{¶45} The appellants contend that it was an abuse of discretion for the trial court to grant the other firefighter-intervenors' motions to intervene in the summer and fall of 2015, but ignore theirs. The city, however, did not oppose the other firefighters' motions to intervene and, thus, there was no reason to delay granting them. But once the city opposed the appellants' motion to intervene, the trial court had to consider opposing motions before it determined which way it would rule. Before the trial court did so, however, the appellants voluntarily withdrew their motion to file their writ of mandamus in the Ohio Supreme Court. At that point, their motion had been pending for just over two months.

{¶46} The appellants further argue that "[i]t was an abuse of discretion for the trial court to expect the eight captains to sit idly while their union, the city, and the nine intervenors who

wanted to protect their spots on the noncompetitive promotion list mediated this dispute," and to "proceed with the underlying litigation well into the fall, setting a case management conference for the parties while continuing to ignore the eight captains' [motion to intervene]." But again, when looking at what actually occurred, their motion had only been pending for just over two months when they "made a calculated, strategic decision" to voluntarily withdraw it.

{¶47} The appellants filed their first motion to intervene on September 8, 2015. According to the appellants, their attorney, along with the attorneys for the city, the union, and all nine intervenors (who wanted to protect their spots on the noncompetitive promotion list) agreed to mediate the dispute. They informed the trial court that they hired a private mediator and set the date for mediation on November 19, 2015. The trial court then held a telephonic case management conference on October 29, 2015, excluding the appellants from the conference because the city opposed their participation. The trial court issued a judgment that same day, stating that it "was informed that the parties have agreed on a private mediator and have set a date for that mediation: 11/19/2015."

{¶48} The appellants maintain that they decided to file a writ of mandamus in the Ohio Supreme Court to halt the mediation occurring without them. They claim that their filing the writ "had the desired effect" of halting the mediation. The trial court issued a judgment entry on November 23, 2015, indicating as much. That judgment entry stated, "[t]he court has been informed that the private mediation that was scheduled in this matter did not go forward and has been indefinitely suspended. The parties are hereby advised that this matter will proceed under the case management schedule established by this court." While the appellants' writ of mandamus was pending in the Ohio Supreme Court, however, the union's case proceeded in the trial court without them.

{¶49} In denying the appellants' July 2017 motion to intervene, the trial court explained that it had held "lengthy hearings and the parties have briefed multiple motions for summary judgment." The trial court further noted that it was prepared to rule on the parties' multiple summary judgment motions as directed to do so by this court in the second appeal. *See Local 93*, 8th Dist. Cuyahoga No. 105033, 2017-Ohio-6887, at ¶ 39.

{¶50} In its decision denying the appellants' motion to intervene, the trial court also found that the "time for new pleadings and claims has clearly passed." The trial court stated that

> the proposed intervenors have not simply re-filed their prior motion to intervene. In their prior motion to intervene, filed on 09/08/2015, the intervenors sought to participate as defendants, and with that motion, an answer was properly submitted. However, the motion was withdrawn on 11/12/2015 and the proposed intervenors now seek to intervene as plaintiffs.

{¶51} After review, we simply cannot say that the trial court abused its discretion. If permitted to intervene in the case at this point, the trial court could not rule on the summary judgment motions as directed by this court and it would have to hold additional hearings. The defendants would have to respond to the appellants' complaint. The parties would likely have to file new summary judgment motions or at least respond to the appellants' motion for summary judgment.

{¶52} Simply put, after the appellants withdrew their first motion to intervene and filed their writ of mandamus in the Supreme Court, the case proceeded without them from November 2015 until September 2016, when the trial court dismissed the case. After the Supreme Court denied their writ in December 2016, the appellants could not move to intervene at that point because the case was pending on appeal for the second time. Although appellants assert that this fact — that the case was pending on appeal — mitigates their delay in filing their second

motion to intervene, this still does not change the fact that they voluntarily withdrew their original motion to intervene in the first place.

{¶53} Thus, we find no abuse of discretion on the part of the trial court for denying appellants' motion to intervene due to untimeliness.

### E. Interests Adequately Represented by Another Party

{¶54} Finally, the appellants strongly argue that their interests are not adequately represented by the union and, thus, under Civ.R. 24(A), they have a right to intervene in the case. They claim that they "are challenging the positions already filled" by the noncompetitive exam, but that the union is not. They cite to a footnote in this court's July 20, 2017 decision in support of this argument where we stated:

> At appellate oral argument, both parties conceded that they were not challenging the positions already filled by the city's noncompetitive examination process. *Moore* [*v. Agin*], 12 Ohio St.3d 173, 465 N.E.2d 1293 (1984).

*Local 93*, 8th Dist. Cuyahoga No. 105033, 2017-Ohio-6887, ¶ 39, fn. 3.

{¶55} The city, however, maintains that despite what was said at oral argument in the second appeal, the union is seeking to fill all battalion chief and assistant chief vacancies with firefighters who take a competitive exam — including those six firefighters who were promoted through the noncompetitive procedures. We agree.

{¶56} Contrary to what the union said at oral argument in the last appeal and what the appellants now claim, the union's demands include (1) "declaring that all vacancies in the promoted ranks of [the fire department] created *since the expiration of the most recent civil service eligibility list*, as well as any such vacancies which have yet to be created in the promoted ranks, must be filled by a competitive examination process in compliance with applicable law," (2) declaring that the March 2014 bulletin "and any non-competitive promotional process

administered pursuant thereto" were in violation of the Ohio Constitution, Ohio Revised Code, the city charter, and the city civil service rules, (3) a permanent injunction against the city prohibiting the city from administering a noncompetitive promotional exam and prohibiting the city from "effectuating any promotions" without first administering a competitive exam ascertaining the merit and fitness of the candidates, and (4) issue a writ of mandamus

> to immediately administer competitive examinations, certify eligibility lists which would expire in July 2016, and make promotional appointments therefrom to fill (through the competitive promotional process) all vacancies created *since the expiration of the last certified civil service eligibility list* as well as all vacancies which are created during the life of the eligibility list certified through the competitive promotional process.

(Emphasis added.)   Union's complaint at 19.

{¶57} The "last certified civil service eligibility list" expired at the end of 2013.   Thus, the union's demands that "all vacancies created since the expiration of the last certified civil service eligibility list" be filled with firefighters who take a competitive exam means that the union wants past and future vacancies to be filled with firefighters who take a competitive exam.  Stated another way, the union wants all vacancies since the end of 2013, which would include the positions occupied by the six firefighters who were promoted by the noncompetitive process, to be filled by the highest scores on a competitive exam.   This is the exact relief the appellants seek in their complaint.

{¶58} Accordingly, we conclude that the appellants have not established they have a right to intervene in the action because the union adequately represents their interests.   Civ.R. 24(A)(2).

{¶59} After finding no merit to any of appellants' arguments, we find that the trial court did not abuse its discretion when it denied their motion to intervene.

**{¶60}** The appellants' sole assignment of error is overruled.

**{¶61}** Judgment affirmed.

It is ordered that appellees recovers from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR