[Cite as *Miller v. Miller*, 2019-Ohio-1886.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 107319

## CODY A. MILLER, ET AL.

PLAINTIFFS-APPELLEES

vs.

## DAVID MILLER

DEFENDANT-APPELLEE

[Appeal by Karen Michael, Proposed Intervenor-Appellant]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-854301

**BEFORE:** Sheehan, J., Boyle, P.J., and Headen, J.

**RELEASED AND JOURNALIZED:** May 16, 2019

**ATTORNEY FOR APPELLANT**

Edgar H. Boles
Dinn, Hochman & Potter, L.L.C.
5910 Landerbrook Drive, Suite 200
Cleveland, OH 44124


**ATTORNEYS FOR APPELLEES**

**For Cody A. Miller and RAM Sensors, Inc.**

Scott J. Orille
Susan M. White
Weston Hurd, L.L.P.
1301 East 9th Street, Suite 1900
Cleveland, OH 44114


**For David Miller**

David Miller, pro se
650 Station Boulevard, Suite 419
Aurora, IL 60504

MICHELLE J. SHEEHAN, J.:

**{¶1}** Proposed intervenor-appellant Karen Michael ("Karen"), f.k.a. Karen Miller, appeals from the trial court's denial of her motion to intervene and motion to vacate judgment in Cuyahoga C.P. No. CV-15-854301, an action involving plaintiffs-appellees Cody Miller ("Cody") and RAM Sensors, Inc. ("RAM Sensors") and defendant-appellee David Miller ("David"). For the reasons that follow, we affirm the trial court.

## I. Procedural and Factual History

**{¶2}** Cody is the son of defendant-appellee David Miller and proposed intervenor-appellant Karen Michael. Cody's grandfather (David's father) gifted Cody and David each 50 percent of the shares of RAM Sensors' stock in 2009, when Cody was 15 years old. David was the director and president of RAM Sensors at that time.

### A. Divorce Proceedings

**{¶3}** In November 2013, Karen filed a complaint for divorce against David. Karen and David entered into a separation agreement that was adopted by the court on January 12, 2015. The separation agreement provided for spousal support in the amount of $15,000 per month for 20 years, terminating December 2034. The agreement also provided that upon completion of the current spousal support, David was required to pay Karen additional support of six quarterly payments totaling $450,000. A term of the separation agreement provided that Karen relinquishes all rights and interest she may have to the assets and income of RAM except that David shall secure his spousal support obligations by executing a cognovit note and stock pledge to secure his payments. The

separation agreement further provided that David shall not encumber, transfer, assign, pledge, or otherwise alienate his interest in RAM without Karen's prior written consent. Section 2(E) of the separation agreement provides:

> E.    *Business    Interests*
>
> [David] has an interest in * * * Ram Sensors, Inc. in consideration of the terms of this Agreement and the specific terms set forth hereinbelow, [Karen] relinquishes all right title and interest she may have to the assets and income of both entities except that [David] shall secure his obligations by assigning to [Karen] his interest in Ram Sensors, Inc. to secure the payments due to [Karen]. [David] shall execute a Cognovit Note and stock pledge to secure the payments and he shall not encumber, transfer, assign, pledge or otherwise alienate his interest in Ram Sensors, Inc. without [Karen's] prior written authorization until he has satisfied his obligations herein.

Finally, the domestic relations January 12, 2015 order provides that the domestic relations court "shall retain jurisdiction to effectuate the terms of the September Agreement, including the collection of spousal support due to plaintiff from defendant."

{¶4} David executed a cognovit note for the $450,000, which was secured by a stock pledge agreement on January 22, 2015. The pledge agreement provided that as security for payment of the $450,000 to Karen under the note, David pledged all of the equity interest he held in RAM Sensors, which was 50 percent of RAM Sensors' stock.

The pledge agreement further provided that as long as David is not in default for the principal amount owed in the cognovit note of $450,000, David "shall have the right to exercise all rights, powers and privileges" as the owner of the RAM stock. Only if David fails to pay the principal of the $450,000 owed per the cognovit note can Karen have the right to (a) cause David's ownership interest in the RAM stock to be registered in her name, or (b) sell David's interest in the RAM stock at a public or private sale.

{¶5} After executing the stock pledge agreement, Karen recorded a UCC financing statement on September 23, 2016, with the Ohio Secretary of State, which provided as follows:

> Pursuant to the terms of a certain agreement between the Debtor [David Miller] and Secured Party [Karen Miller] entitled "Pledge Agreement," dated January 22, 2015, the security interest described herein is the first position lien on all of Debtor's right, title, and interest in and to Debtor's equity interest in RAM Sensors, an Ohio Subchapter S corporation, including all classes of stock whether certificated or uncertificated.

{¶6} According to Cody, during divorce proceedings between his parents, his mother informed him that David had stolen funds from Cody's Vanguard account, which included distributions to Cody from RAM Sensors, and David was deliberately mismanaging and attempting to destroy RAM Sensors so that he would not have any assets with which to pay Karen spousal support. Karen urged Cody to file a lawsuit against David.

## B. Trial Court Action

{¶7} On November 13, 2015, when Cody was 22 years old, he and RAM Sensors filed a verified complaint for money damages, declaratory relief, and injunctive relief against David in this underlying action. Specifically, the complaint alleged that (1) as an officer, director, and shareholder of RAM Sensors, David breached his fiduciary obligations by misappropriating funds belonging to Cody and RAM Sensors, competing with RAM Sensors, dissipating and committing waste of RAM Sensors' assets, and failing to disclose to Cody the records and financial statements of RAM Sensors despite repeated demands; (2) David exercised dominion and control over funds belonging to Cody and RAM Sensors, which amounted to theft and conversion from Cody's Vanguard accounts as well as distributions made by RAM Sensors to Cody; (3) David exercised dominion and control over funds belonging to RAM Sensors and its shareholders, which included Cody, for personal use and amounted to theft and conversion; and (4) David's use of his position and control over the accounts of RAM Sensors and Cody constituted unjust enrichment. The complaint also sought declaratory judgment regarding the parties' rights, obligations, and ownership interests in RAM Sensors and an injunction, prohibiting David from maintaining possession of funds belonging to RAM Sensors, writing checks on the company's accounts, or otherwise exercising any control over any of RAM Sensors' funds or taking any action that would impair the value of RAM Sensors.

**{¶8}** In February 2016, the trial court granted a temporary restraining order, removing David from control of RAM Sensors. Thereafter, the parties consented to a preliminary injunction. Because David failed to answer or otherwise defend the action, in January 2017, the plaintiffs-appellees filed a motion for default judgment against David to recover damages allegedly sustained as a result of David's theft from Cody and RAM Sensors. Based upon a forensic audit performed by Stephen Nelder, a certified fraud examiner, Cody and RAM Sensors sought total compensatory damages against David in favor of Cody in the amount of $2,874,437.56 and in favor of RAM Sensors in the amount of $3,554,891.00, plus attorney fees and costs. Subsequent to the filing of the motion for default judgment, David began settlement discussions with Cody and RAM Sensors.

## C. Outstanding Spousal Support

**{¶9}** According to Karen, David was in default of his current support obligation in excess of $100,000. In January 2017, Karen and David purportedly entered into a second agreed judgment entry in the divorce case, which provided that David pay Karen spousal support, attorney fees, and travel expenses in the amount of $119,907.18. Under this agreement, David was also required to execute any documents "necessary to secure funds and/or payment as to subject spousal support obligation owed to [Karen], including * * * assignment of [David's] interest in any and all corporate distributions from RAM Sensors, a new promissory note, cognovit note, and stock pledge agreement" concerning David's 50 percent of RAM Sensors' stock. Karen maintains that this second agreement

secured the current support obligations. Both Cody and David deny Karen's claim, and there is no evidence in the record that the parties executed any new documents establishing the alleged new lien on the current support obligation.

## D. Trial Court Settlement Agreement

**{¶10}** As a result of settlement negotiations between Cody, RAM Sensors, and David, on April 13, 2017, the parties entered into a settlement agreement wherein David consented to judgment in the case, the judgment being stayed, and the judgment being deemed satisfied upon the surrender of David's stock in RAM Sensors to Cody and the payment of certain life insurance proceeds to be received by David. The settlement agreement stated, in part, that David is the true and lawful owner of David's 50 percent stock and he has not sold, transferred, or otherwise encumbered the stock "except pursuant to the certain stock pledge agreement provided in favor of * * * Karen." Adopting the settlement agreement, the court granted a permanent injunction in favor of Cody and RAM Sensors, entered judgment in favor of Cody for $2,874,437.56, and ordered David to surrender and convey to Cody all of his interest in RAM Sensors as partial satisfaction of the judgment.

E.    Domestic Relations Court Filings

{¶11} On May 4, 2017, Karen filed a "motion to transfer [David's] 50% corporate stock * * *" and a motion for declaratory judgment in the domestic relations court, asking for the court (1) to find that David had assigned his interest in his 50 percent RAM Sensors stock to Karen at the time of the divorce and the stock pledge agreement remains in full force and effect, (2) to find that David's transfer of stock to Cody in partial satisfaction of the judgment in the general division common pleas case was an illegal transfer, and (3) to effectuate the transfer of his stock to Karen due to his wrongful transfer and his failure to pay current spousal support.   Cody filed a motion to intervene in the domestic relations case to file a motion to dismiss, arguing that Karen's motion was not properly before the court because Karen's interest in RAM Sensors stock is a lien to secure the debt David will owe in 2034, and if David misses a current support obligation, the 2034 support obligation does not immediately become due and owing.   Cody further argued that Karen cannot foreclose on the RAM Sensors stock because Cody is owner of all RAM Sensors stock, yet he was not a party to Karen's domestic relations action.

{¶12} After Karen filed the motions in domestic relations court, counsel for Cody and RAM Sensors engaged Karen in settlement negotiations.   Cody maintained that he received David's stock in partial satisfaction of the judgment against David subject to Karen's lien.   He stated that he fully intended to protect and preserve his mother's lien and that the transfer of David's stock to Cody was expressly made subject to Karen's

stock pledge agreement.     According to Karen, because none of the purported settlement offers duplicated Karen's rights under the divorce decree, settlement negotiations failed.

{¶13} On February 23, 2018, Karen voluntarily dismissed (withdrew) her domestic relations motions, and on March 21, 2018, nearly one year after the final agreed judgment in the underlying matter in the general division court, Karen filed a motion to intervene and motion to vacate the agreed judgment entry in the underlying action.  Cody and RAM Sensors opposed Karen's motion.  On May 17, 2018, the trial court denied Karen's motion to intervene, finding the motion untimely.   The court also concluded that it had subject matter jurisdiction over the plaintiffs' claims and, therefore, the agreed judgment entry was not void.   Karen then filed a separate motion to vacate, which the court also denied.

{¶14} Karen now appeals the trial court's denial of her motion to intervene and motion to vacate judgment, assigning two errors for our review: (1) the trial court erred when it denied her motion to intervene and abused its discretion regarding the timeliness factor; and (2) the trial court erred when it denied her motion to vacate the April 13, 2017 agreed judgment entry.

## II. Law and Analysis

**{¶15}** In her first assignment of error, Karen contends that the trial court erred in denying her motion to intervene as a matter of right under Civ.R. 24(A) because (1) the court gave no factual basis for denying intervention and not vacating the void judgment; and (2) she was a necessary and indispensable party under Civ.R. 19(A)(2), and the failure to join her in the action resulted in the trial court lacking subject matter jurisdiction, thus rendering the judgment void ab initio. She further argues that because she was a necessary and indispensable party, the trial court improperly considered the timeliness of her motion. Karen contends in her second assignment of error that because the agreed judgment was void, the court lacked subject matter jurisdiction and therefore should have granted her motion to vacate. Because Karen's arguments are interrelated, we will address the assignments of error together.

### A. Intervention

**{¶16}** Within her first assignment of error, Karen takes issue with the trial court's failure to provide a "factual basis" for its judgment denying her intervention and failing to vacate the judgment as void. We note initially that Civ.R. 24 does not require the trial court to make findings of fact or conclusions of law. *Rimmer v. Citifinancial*, 8th Dist. Cuyahoga No. 106337, 2018-Ohio-2845, ¶ 18. And "[i]n the absence of such language, we presume the trial court issued its judgment upon thorough consideration of Civ.R. 24 and the relevant facts supporting the [appellant's motion] to intervene." *Id.*

Furthermore, we find in this case that the trial court's entry did indeed include an explanation supporting its ruling, stating:

> Non-party Karen Michael failed to timely intervene pursuant to Civ.R. 24. This lawsuit was initially filed on 11/13/2015, and the parties entered into an agreed judgment entry on 4/13/2017. Ms. Michael filed her motion to intervene on 3/21/2018. *Per Ms. Michael's affidavit and Cody Miller's affidavit, Ms. Michael knew of this lawsuit from the date of filing and had knowledge of the consent judgment entry prior to it being filed. Ms. Michael chose to challenge the conveyance of stock in her divorce action, rather than intervening in the present case. All other parties would be substantially prejudiced due to Ms. Michael's failure to timely intervene.* Further, the court finds that it did not lack subject matter jurisdiction over Plaintiffs' claims. Therefore, the agreed judgment entry is not void ab initio.

(Emphasis added.) We therefore find no error where the trial court did not provide further explanation for its decision. *See Likover v. Cleveland*, 60 Ohio App.2d 154, 159, 396 N.E.2d 491 (8th Dist.1978) (finding no error in the trial court's failure to supplement its denial of a motion to intervene with a written opinion).

{¶17} Turning to the underlying merits of the appeal, we review a trial court's ruling on an application to intervene for an abuse of discretion. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935.

**{¶18}** Civ.R. 24(A) provides when a party may intervene as a matter of right:

Upon timely application anyone shall be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

**{¶19}** Courts liberally construe this rule in favor of intervention. *State ex rel. Watkins v. Eighth Dist. Court of Appeals*, 82 Ohio St.3d 532, 534, 1998-Ohio-190, 696 N.E.2d 1079; *Assn. of Cleveland Firefighters, Local 93 I.A.F.F. v. Cleveland*, 2018-Ohio-2049, 113 N.E.3d 1007, ¶ 29 (8th Dist.). However, "the putative intervenor still bears the burden of establishing the right to intervene." *Grove Court Condominium Unit Owners' Assn. v. Hartman*, 8th Dist. Cuyahoga No. 94910, 2011-Ohio-218, ¶ 14.

**{¶20}** A party seeking intervention of right must show (1) the application is timely, (2) the intervenor claims an interest relating to the subject of the action, (3) the intervenor is so situated that the disposition of the action may as a practical matter impair or impede his or her ability to protect that interest, and (4) the existing parties do not adequately represent his interest. *Rimmer*, 8th Dist. Cuyahoga No. 106337, 2018-Ohio-2845, at ¶ 22; *Widder & Widder v. Kutnick*, 113 Ohio App.3d 616, 624, 681 N.E.2d 977 (8th Dist.1996). The failure to establish "'any one of the elements set forth in Civ.R. 24(A)

will result in denial of the right to intervene.'" *Rimmer* at ¶ 23, quoting *Fairview Gen. Hosp. v. Fletcher*, 69 Ohio App.3d 827, 831, 591 N.E.2d 1312 (10th Dist.1990).

{¶21} When reviewing a motion to intervene, the trial court must initially consider whether the individual seeking intervention made a timely application. *State ex rel. First New Shiloh Baptist Church v. Meagher*, 82 Ohio St.3d 501, 503, 696 N.E.2d 1058 (1998). And the timeliness of an application to intervene is a matter within the sound discretion of the trial court. *Id.*; *Assn. of Cleveland Firefighters, Local 93 I.A.F.F.* at ¶ 42.

{¶22} The timeliness of a motion to intervene is dependent upon the facts and circumstances of the case. *Meagher* at 503. In determining timeliness, courts consider (1) the point to which the suit had progressed, (2) the purpose for which intervention is sought, (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his or her interest in the case, (4) the prejudice to the original parties due to the proposed intervenor's failure after he or she knew or reasonably should have known of his or her interest in the case to apply promptly for intervention, and (5) the existence of unusual circumstances militating against or in favor of intervention. *Id.*

{¶23} Generally, courts will not permit a party to intervene in a matter once the court enters final judgment. "'Intervention after final judgment has been entered is unusual and ordinarily will not be granted.'" *Hartman* at ¶ 22, quoting *Meagher* at 504; *Likover*, 60 Ohio App.2d at 159, 396 N.E.2d 491 (stating that intervention after judgment

is entered, "is quite unusual and seldom granted"); *Smoyer v. Smoyer*, 6th Dist. Wood No. WD-84-9, 1984 Ohio App. LEXIS 10125, 8 (June 29, 1984) (stating that Civ.R. 24 is applied less liberally after judgment, thus resulting in a "heavy burden" on the proposed intervenor).   Intervention, however, may be permitted "when the intervenor has no other alternative remedy and intervention is the only way to protect the intervenor's rights." *Hartman*, citing *Owens v. Wright*, 8th Dist. Cuyahoga No. 64031, 1993 Ohio App. LEXIS 832 (Feb. 18, 1993).   Nevertheless, the determination of whether a Civ.R. 24 motion to intervene is timely ultimately depends on the facts and circumstances of the case. *Meagher* at 503.

{¶24} Upon review of the record, and in consideration of the timeliness factors, we find the trial court did not abuse its discretion when it found that Karen's motion to intervene was untimely.

{¶25} Here, the record shows that Karen filed her motion to intervene after final judgment had been entered in the matter.   Cody filed the complaint against David on November 13, 2015, and the trial court entered final judgment on April 13, 2017.   Then on March 21, 2018, nearly one year after final judgment, Karen filed her motion to intervene.

{¶26} The record also shows that Karen had knowledge of the lawsuit well before the court entered final judgment.   In his affidavit attached to his opposition to Karen's motion to intervene, Cody stated that Karen advised him that David had been stealing funds from his Vanguard brokerage account, which were distributions to Cody from

RAM Sensors, and mismanaging the company in order to avoid paying Karen spousal support. According to Cody, Karen urged him to file the lawsuit to recover the stolen funds, referred Cody to his present attorney, and provided Cody and his counsel with financial documents supporting the lawsuit. Karen does not dispute this knowledge.

**{¶27}** Furthermore, the record demonstrates that Karen had knowledge of the proposed settlement agreement with David prior to final judgment. In an email dated March 22, 2017, three weeks before final judgment was entered, Cody forwarded to Karen "proposed settlement documents." The proposed settlement agreement provided, in part, as follows:

> 1. Judgment Entry. David Miller shall consent to a judgment being entered against him and in favor of Mr. Cody Miller in the principal amount of $2,874,437.56 plus interest at the statutory rate[]. * * *
>
> 2. Settlement Amount. David Miller shall convey to Cody Miller the following consideration, all of which collectively shall be the "Settlement Amount," subject to the representations and warranties set forth in this Agreement:
>
>> 2.1 David Miller shall, contemporaneous with the execution of this Agreement and consistent with the Representations and Warranties set forth herein, convey to Mr. Cody Miller all of David Miller's stocks, rights, title, and ownership interests in and to RAM Sensors. * * *
>
> 3. David Miller's Representations & Warranties. David Miller hereby represents and warrants as follows:
>
>> 3.1 David Miller is the true and lawful owner of the RAM Sensors stock, that he has not sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise hypothecated or

encumbered the RAM [Sensors] stock except pursuant to the certain stock pledge agreement provided in favor of Ms. Karen Michaels * * *.

{¶28} Karen maintains, however, that none of the documents filed in the underlying action referenced David's stock or Cody's claim to the stock until the agreed judgment entry was filed on April 13, 2017, and therefore, she had no knowledge that David's stock would be used for partial satisfaction of the judgment in this action until final judgment was entered. Even if this were true, rather than filing her motion to intervene in the underlying action upon learning of the final judgment, she opted to file motions in the domestic relations division, including a motion to transfer David's RAM Sensors stock to her and a motion for declaratory judgment concerning the stock.

{¶29} The record further demonstrates that for the next several months while Karen's motions in domestic relations court remained pending, rather than attempting to intervene in the underlying matter, she entertained settlement negotiations with Cody and RAM Sensors. Cody explained that he was aware of the lien his mother had on David's share of stock and he agreed to take David's 50 percent share subject to his mother's lien because he wished to protect and preserve his mother's lien. Karen concluded, however, that the various settlement proposals were "complicated schemes" and Cody, David, and RAM Sensors were colluding to prevent her from receiving her spousal support and the "security of David Miller's RAM stock." The negotiations therefore failed. Thereafter, on February 23, 2018, Karen dismissed (withdrew) her motions in the

domestic relations court and sought to intervene in the underlying action. By the time Karen had sought intervention, however, the case had been concluded for nearly one year.

**{¶30}** Karen's actions here demonstrate that she filed her motion to intervene nearly one year after final judgment, and she knew or had reason to know of her interest in the action prior to final judgment and certainly well before March 2018, when she ultimately sought intervention. Moreover, the record shows that intervention was not the only remedy available to protect her interest in the RAM Sensors stock. An alternative remedy was available to Karen in domestic relations court, and Karen indeed availed herself of that remedy when she filed her motion to transfer David's RAM Sensors stock and a motion for declaratory judgment concerning the stock less than one month after final judgment in the underlying action. And where a motion to intervene is filed after judgment is entered, yet the proposed intervenor has alternative remedies available to him or her, the trial court does not abuse its discretion in denying the motion to intervene. *Likover*, 60 Ohio App.2d at 159, 396 N.E.2d 491.

**{¶31}** Additionally, the purpose for which Karen sought intervention is not compelling. Karen contends that intervention is necessary in order to protect her interest in David's 50 percent RAM Sensors stock. She argues that David's share of the stock is security for David's spousal support obligations — both current and future — and the conveyance of David's interest in the stock as partial satisfaction of the judgment was illegal. She also argues that this interest made her a necessary party to the action.

{¶32} Karen's interest in David's share of the RAM Sensors stock, however, is a lien that becomes due in the future; it is not a present interest in ownership of the stock. As part of the divorce settlement, David agreed to pay Karen $450,000 in additional support beginning December 2034. He then executed a cognovit note in the amount of $450,000 and secured it with a lien on his share of RAM Sensors stock, which was perfected by a stock pledge agreement and recorded with the Ohio Secretary of State. And the record shows that the transfer of David's 50 percent share to Cody was made subject to Karen's interest. Karen's interest in the stock, as a secured creditor, is therefore preserved. The evidence does not support Karen's argument that documents were executed entitling her to immediate transfer of David's stock for satisfaction of David's current support indebtedness, i.e., a new stock agreement, cognovit note, or UCC statement.

{¶33} Finally, we consider the prejudice to the parties. Generally, where courts review intervention of right, "greater consideration may be given to the possible prejudice to the intervenor as against the delay or prejudice to the original parties in adjudicating their rights and liabilities." *Krancevic v. McPherson*, 8th Dist. Cuyahoga No. 84511, 2004-Ohio-6915, ¶ 8, citing *Likover*, 60 Ohio App.2d at 159, 396 N.E.2d 491. However, in this case, final judgment had been entered for nearly one year when Karen filed her motion to intervene, the original parties to the underlying action had reached a settlement, David consented to judgment and conveyed his interest in the stock to Cody subject to Karen's lien, and Cody and RAM Sensors had filed tax returns showing Cody

as the sole shareholder of the company. Moreover, Karen sought to vacate the judgment, interject several new issues, including a declaratory judgment action and request for the appointment of a receiver, and add new parties. Karen's actions would therefore cause significant prejudice to the existing parties. *See Hartman*, 8th Dist. Cuyahoga No. 94910, 2011-Ohio-218, at ¶ 23.

**{¶34}** In light of the above, we cannot say that the trial court's decision was "'so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.'" *Assn. of Cleveland Firefighters, Local 93 I.A.F.F.*, 2018-Ohio-2049, 113 N.E.3d 1007, at ¶ 44, quoting *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996) (explaining what constitutes an abuse of discretion). The trial court, therefore, did not abuse its discretion in finding Karen's motion to intervene untimely.

## B. Necessary Party

**{¶35}** To the extent Karen claims that her interest in David's stock made her a necessary party to the action, we find no merit. Civ.R. 19(A) governs joinder of persons "needed for just adjudication" and provides that

[a] person * * * shall be joined as a party in the action if * * * (2) he claims

an interest relating to the subject of the action and is so situated that the

disposition of the action in his absence may (a) as a practical matter impair

or impede his ability to protect that interest or * * * (3) he has an interest

relating to the subject of the action as an assignor, assignee, subrogor, or subrogee.

Civ.R. 19(A)(2) and (3).

**{¶36}** The underlying action is a complaint for money damages, declaratory relief, and injunctive relief against David for David's theft or misappropriation of funds belonging to Cody and RAM Sensors. Karen's purported interest in the action is that of a lienholder — she has a lien on David's share of RAM Sensors stock that was transferred to Cody in partial satisfaction of the money judgment. Karen's interest in the stock becomes due in 2034, and the record establishes, through the settlement agreement and Cody's affidavit, that Cody takes David's stock subject to the lien created by the stock pledge agreement between Karen and David. The underlying action did not seek to foreclose or extinguish Karen's lien. And Karen fails to demonstrate how the disposition of the underlying action in her absence may impair or impede her ability to protect this interest.

**{¶37}** Therefore, under Civ.R. 19(A), we cannot find that Karen's participation "is necessary for a full or just adjudication of the claims in the underlying action." *Atkinson v. Austria*, 2d Dist. Greene No. 89-CA-4, 1989 Ohio App. LEXIS 4349, 5 (Nov. 20, 1989). Consequently, Karen's claim that the parties' failure to join her as a necessary party in the underlying action rendered the timeliness of her motion to intervene irrelevant and resulted in a void judgment is without merit.

C. Shareholder Derivative Action and Uniform Transfer to Minors Act

**{¶38}** Karen contends that the agreed final judgment is voidable because Cody's claim did not comply with Civ.R. 23.1, the shareholder derivative action rule.

**{¶39}** In a shareholder derivative action, a shareholder brings an action under Civ.R. 23.1 on behalf of the corporation for injuries sustained by wrongs done to a corporation. *Boedeker v. Rogers*, 140 Ohio App.3d 11, 21, 746 N.E.2d 625 (8th Dist.2000). The claim initiated by the shareholder against directors or third parties "'is not his own but the corporation's,'" and although the corporation is named a defendant, "'it is the real party in interest, the [shareholder] being at best the nominal plaintiff. * * * The heart of the action is the corporate claim.'" *Miller v. Gen. Motors Corp.*, 8th Dist. Cuyahoga No. 55200, 1989 Ohio App. LEXIS 1099, 12-13 (Mar. 30, 1989), quoting *Ross v. Bernhart*, 396 U.S. 531, 538-539, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). And Civ.R. 23.1 requires that "the complaint shall [in a shareholder derivative action] be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law." Thus, where an individual is not a shareholder, he or she lacks standing to bring a shareholder derivative action. *See Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 33.

**{¶40}** Here, as previously discussed, we determined that Karen's purported interest in RAM Sensors stock is that of a lienholder. She was not a shareholder of RAM Sensors at the time of the filing of the complaint against David in the underlying action.

Karen therefore lacks standing to attack the judgment relating to Cody's claim under Civ.R. 23.1.

**{¶41}** Karen also claims that the probate court had exclusive jurisdiction over the claims asserted by Cody regarding his Vanguard funds and his share of RAM Sensors stock, thus resulting in the trial court's lack of subject matter jurisdiction in the underlying action. Karen argues that because the funds at issue in this case were originally gifted to Cody pursuant to the Uniform Transfer to Minors Act ("UTMA"), Cody should have filed a claim against the custodian of the UTMA property in probate court, citing R.C. 5814.01 et seq. Karen alleges that C. Joann Miller, Cody's grandmother, is the custodian.

**{¶42}** Under R.C. 5814.03, "a gift or transfer to a minor child made pursuant to the Transfers to Minors Act is irrevocable and conveys to the minor indefeasibly vested legal title to the property." *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 99751, 2014-Ohio-697, ¶ 26; *LCP Holding Co. v. Taylor*, 158 Ohio App.3d 546, 2004-Ohio-5324, 817 N.E.2d 439, ¶ 55 (11th Dist.) (concerning transfer of stock to a minor child). These funds, or accounts, are the sole property of the minor child in which the parents of the child "'have absolutely no property interest.'" *Hyder v. Hyder*, 9th Dist. Wayne No. 06CA0014, 2006-Ohio-5285, ¶ 9, quoting *Ramus v. Ramus*, 8th Dist. Cuyahoga No. 34965, 1976 Ohio App. LEXIS 7431, 7-8 (Aug. 19, 1976). And under the UTMA, any changes to a custodial account held on behalf of a minor, must be made

by a probate court. *Brown v. Brown*, 12th Dist. Madison No. CA2008-08-021, 2009-Ohio-2204, ¶ 50.

**{¶43}** Here, presuming Cody did in fact receive the relevant Vanguard funds and RAM Sensors stock as a gift or transfer through the UTMA, Karen has no interest in the funds or stock. Nor is Karen the alleged custodian of the funds. She therefore has no interest in any assets gifted under the UTMA and lacks standing to object to Cody's claims concerning any purported "custodial property."

### III. Conclusion

**{¶44}** The trial court did not abuse its discretion in denying proposed intervenor-appellant Karen's motions to intervene and vacate judgment in the underlying action. Karen's motion to intervene is untimely: she filed her motion to intervene nearly one year after final judgment, after she had availed herself of an alternative remedy and voluntarily dismissed that action; she knew about the complaint in the underlying action being filed and she knew or had reason to know of the settlement agreement between Cody, David, and RAM Sensors before final judgment was entered; her interest as a lienholder is not impaired; and the prejudice to the existing parties in vacating judgment is substantial. Additionally, Karen has not demonstrated that her participation is necessary for adjudication of the underlying action or that the final judgment is void. Further, Karen lacks standing to raise claims concerning Cody's shareholder-derivative action or any purported custodial property under the UTMA.

**{¶45}** Karen's assignments of error are overruled.

**{¶46}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, P.J., and
RAYMOND C. HEADEN, J., CONCUR